UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE ORTIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ENHANCED RECOVERY COMPANY,<br><br>　　　　Defendant. | No. 2:17-cv-0607 KJM DB PS<br><br><br>ORDER AND<br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se. This matter was, therefore, referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the court are plaintiff's motion for default judgment, motion for judgment on the pleadings, motion to "apply laws," and motion stay, as well as defendant's motion for a protective order, and motion for summary judgment. For the reasons stated below, the undersigned will recommend that defendant's motion for summary judgment be granted while denying all other pending motions.

**BACKGROUND**

Plaintiff commenced this action on February 23, 2017, by filing a complaint in the Sacramento County Superior Court against defendant Enhanced Recovery Company, LLC ("ERC"). (ECF No. 1 at 4.) On March 22, 2017, defendant ERC removed the matter to this court pursuant to federal question jurisdiction. (Id. at 2.) Plaintiff is now proceeding on a second

1

amended complaint. (ECF No. 31.) Therein, plaintiff alleges that in September of 2015, plaintiff "purchased from Sprint the mobile cellular services . . . and a phone." (Sec. Am. Compl. (ECF No. 31 at 1.[1]) Plaintiff, however, "cancelled the services within 10 days of the purchase" by "calling Sprint and . . . return[ing] the phone at the store where [plaintiff] purchased it in Oakland, California." (Id. at 1-2.)

"A few months later" plaintiff was contacted by an employee of Virtuoso Sourcing Group, ("VSG"), "about the same Sprint account." (Id.) The employee "kept badgering that VSG needed proof [plaintiff] returned the phone." (Id.) On February 15, 2016, plaintiff "sent notification to VSG that [plaintiff] disputed the debt and to cease and desist from any form of communication regarding the account[.]" (Id.)

Thereafter, VSG transferred "the invalid debt" to ERC. (Id. at 3.) On August 2, 2016, ERC, "and its executive officers, [defendant] Kirk Moquin, and [defendant] Marty Sarim" sent plaintiff "a notice dated August 2, 2016 .. . in an attempt to collect the same invalid debt." (Id.) Plaintiff "replied to ERC's notice disputing the invalid debt timely," and "informed ERC to cease and desist," although the date the reply was sent is not alleged.[2] (Id.) However, on September 18, 2016, plaintiff received a "similar notice" from ERC "attempting to collect the invalid debt[.]" (Id.) On September 23, 2016, "ERC reported the invalid debt to the credit reporting agency ('CRA')." (Id.)

On September 26, 2016, plaintiff sent ERC a notice "informing ERC of their reporting error and to remove the inaccurate reporting from the CRA[.]" (Id.) However, on September 28, 2016, ERC "re-reported or updated the same invalid debt to the CRA[.]" (Id.) That same day plaintiff "applied for credit and was denied due to ERC['s] reporting the invalid debt." (Id. at 5.) Plaintiff filed a complaint with the Consumer Financial Protection Bureau on October 6, 2016. (Id. at 4.)

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] Attached to the second amended complaint appears to be a copy of the August 2, 2016 collection letter with handwritten notes. (Sec. Am. Compl. (ECF No. 31) at 13.)

In this regard, defendants "did not furnish information" that was "accurate and complete," or "investigate the dispute[.]" (Id. at 6.) Instead, defendants "reported and re-reported [plaintiff's] creditor information to CRA without proving the account was [plaintiff's] responsibility and that the balances [were] accurate." (Id. at 7.) Based on these allegations the second amended complaint asserts causes of action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C § 1692 *et seq*. (Id. at 5-7.)

Defendant ERC filed an answer on December 4, 2017. (ECF No. 32.) On August 1, 2018, defendants Kirk Moquin and Marty Sarim filed an answer. (ECF No. 48.) On April 23, 2019, defendants filed the pending motion for summary judgment. (ECF No. 70.) Due to plaintiff's failure to file a timely opposition, the undersigned issued plaintiff an order to show cause on May 20, 2019. (ECF No. 77.) Plaintiff filed a response on May 21, 2019. (ECF No. 78.) Defendants filed a reply on May 24, 2019. (ECF No. 79.) Plaintiff filed a second response on May 31, 2019. (ECF No. 82.)

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants' statement of undisputed facts, supported by citations to declarations, exhibits, and plaintiff's failure to respond to defendants' requests for admissions, establishes in relevant part the following. On August 1, 2016, ERC was retained by Sprint to collect from plaintiff a debt in the amount of $1,553.06. On August 2, 2016, ERC sent a collection letter to plaintiff notifying plaintiff that plaintiff's account had been placed with ERC for collections and offering plaintiff a settlement at a reduced rate. ERC did not receive a response to the August 2 letter and could not reach plaintiff by phone despite calls to several telephone numbers associated with plaintiff. (Defs.' SUDF (ECF No. 70-1) 1-4.[3])

On September 15, 2016, ERC sent another collection letter to plaintiff. On October 3, 2016, ERC received a letter dated September 26, 2016 from plaintiff wherein plaintiff demanded that ERC "remove that account from my credit report immediately, and to cease and desist all

---

[3] Citations here are to defendants' specific numbered undisputed fact asserted.

collection action." Plaintiff requested verification of the debt in the October 3, 2016 letter. On October 4, 2016, the day after ERC received Plaintiff's September 26, 2016 letter, ERC immediately ceased collection activities and sent verification of the Sprint debt to Plaintiff. ERC's only notice of plaintiff's dispute regarding the debt was from plaintiff. ERC did not receive notice from a CRA that plaintiff disputed the debt. (Defs.' SUDF (ECF No. 70-1) 5-10.)

On October 4, 2016, ERC conducted research to determine the validity of plaintiff's dispute. ERC determined that on September 22, 2015, plaintiff disputed the equipment charges directly with Sprint and Sprint advised plaintiff that he would need to provide proof the equipment was returned. Plaintiff never provided proof to Sprint and Sprint determined that the dispute was invalid. ERC marked the account as disputed but noted that the dispute was invalid based upon its research of the Sprint account. ERC updated plaintiff's account as disputed and placed the account in an investigatory status to prevent further collection efforts. (Defs.' SUDF (ECF No. 70-1) 12-15.)

On October 6, 2016, plaintiff submitted a complaint to the CFPB to complain about ERC's collection activities. On October 9, 2016, ERC submitted a request to the credit reporting agencies to delete the Sprint debt from plaintiff's credit report. On October 19, 2016, ERC responded to plaintiff's CFPB complaint. In response to plaintiff's claim that ERC reported inaccurate dates to the credit reporting agencies, ERC explained that it provided only two dates to the credit reporting agencies: the open date of August 1, 2016 and the delinquency date of June 25, 2015. ERC explained that additional dates on plaintiff's credit report were not the result of any information provided by ERC. Additionally, ERC advised that it confirmed with the three credit reporting agencies that ERC only reported the August 1, 2016 and June 25, 2015 dates and no other dates. (Defs.' SUDF (ECF No. 70-1) 16-20.)

**PLAINTIFF'S OPPOSITION**

As noted above, plaintiff failed to file a timely opposition to defendants' motion. On May 16, 2019, defendants filed a notice of plaintiff's failure to file a timely opposition. (ECF No. 75.) And on May 20, 2019, the undersigned issued plaintiff an order to show cause as to why this action should not be dismissed due to a lack of prosecution. (ECF No. 77.) Plaintiff was also

1 | ordered to file an opposition or statement of non-opposition to defendants' motion for summary
2 | judgment on or before June 7, 2019.  (Id. at 3.)

3 | On May 21, 2019, plaintiff filed a response to defendants' notice of non-opposition.  (ECF
4 | No. 78.)  Plaintiff's arguments therein are nearly incomprehensible.  The filing refers to plaintiff
5 | as "a Master," defendants' counsel as "a servant," and asserts that a "servant . . . did not . . . have
6 | Authority to have removed Plaintiff's, a Master, cause of action . . . into this court[.]"  (Id. at 2.)
7 | The filing also asserts that defendants' "filings . . . authorize [plaintiff] to Order the Court to
8 | Order the Honorable Magistrate Judge Debra Barnes to grant [plaintiff] . . . a Judgment on a
9 | Pleading[.]"  (Id. at 4.)  Moreover, plaintiff does "not need to file a reply to any opposition and or
10 | filing" of the defendants and does not have to "communicate with a servant of a servant of a
11 | servant to a servant, in which all the servants are in violation of law(s)."  (Id. at 5.)

12 | On May 31, 2019, plaintiff filed a second response to defendants' notice of non-
13 | opposition. (ECF No. 82.)  Again, the arguments found therein are nearly incomprehensible.  The
14 | filing asserts that plaintiff "will not address the legality of the Courts orders as it is not necessary,
15 | prudent nor relevant to Plaintiffs' case."  (Id. at 2.)  "The reason [plaintiff is] no longer required,
16 | obligated, nor should be ordered to file a SON is since all defense counsels' motions are defective
17 | there is no need to file a response."  (Id.)  As to the motion for summary judgment, plaintiff's
18 | "merits of complaint are no (sic) relevant" because defendants "misrepresented itself to its
19 | defense counsel and all of defense counsel motions are defect and should be invalid as truthful
20 | testimony."  (Id. at 8.)

21 | Neither of plaintiff's responses contain any evidence in support of plaintiff's claims.  Nor
22 | do the filings comply with Local Rule 260(b).  That rule requires a party opposing summary
23 | judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed
24 | facts and (2) expressly admit or deny each fact.  Under that provision the party opposing
25 | summary judgment is also required to cite evidence in support of each denial.  In the absence of
26 | the required admissions and denials, the undersigned has reviewed plaintiff's filings in an effort
27 | to discern whether plaintiff denies any fact asserted in defendants' statement of undisputed facts
28 | and, if so, what evidence plaintiff has offered that may demonstrate the existence of a disputed

issue of material fact with respect to any of plaintiff's claims.  The undersigned will discuss plaintiff's relevant denials, if any, in analyzing defendants' motion for summary judgment.

**STANDARDS**

**I.     Summary Judgement**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

////

1  **II.     Fair Debt Collection Practices Act**

2  "The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt

3  collection practices by debt collectors, to insure that those debt collectors who refrain from using

4  abusive debt collection practices are not competitively disadvantaged, and to promote consistent

5  State action to protect consumers against debt collection abuses.'" Gonzales v. Arrow Financial

6  Services, LLC, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).

7  "In order for a plaintiff to recover under the FDCPA, there are three threshold

8  requirements: (1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector';

9  and (3) the defendant must have committed some act or omission in violation of the FDCPA."

10 Robinson v. Managed Accounts Receivables Corp., 654 F.Supp.2d 1051, 1057 (C.D. Cal. 2009)

11 (quoting Withers v. Eveland, 988 F. Supp. 942, 945 (E.D. Va. 1997)).

12 **III.    Fair Credit Reporting Act**

13 The

> FCRA imposes a number of procedural requirements on consumer reporting agencies to regulate their creation and use of consumer reports. The statute gives consumers affected by a violation of such requirements a right to sue the responsible party, including the right to sue (and to recover statutory damages) for willful violations even if the consumer cannot show that the violation caused him to sustain any actual damages.

18 Robins v. Spokeo, Inc., 867 F.3d 1108, 1110-11 (9th Cir. 2017).

19                                              **ANALYSIS**

20 **I.      Defendants' Motion For Summary Judgment**

21        **A.      Deemed Admissions**

22 On January 26, 2018, defendants served on plaintiff Defendants' Requests for Admissions

23 Set One. (Turner Decl. (ECF No. 70-2) at 2.) Plaintiff never responded to those requests for

24 admissions. (Id.) And plaintiff never moved to withdraw or amend those admissions.

25 The "[f]ailure to timely respond to requests for admissions results in automatic admission

26 of the matters requested. No motion to establish the admissions is needed because Federal Rule

27 of Civil Procedure 36(a) is self-executing." F.T.C. v. Medicor LLC., 217 F.Supp.2d 1048, 1053

28 (C.D. Cal. 2002) (citation omitted); see also In re Pacific Thomas Corporation, 715 Fed. Appx.

778, 779 (9th Cir. 2018) ("Rule 36 is self-executing, meaning that a party admits a matter by failing to serve a response to the request within thirty days; the opposing party does not have to file a motion to deem the matter admitted."). "Once admitted, the matter 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission' pursuant to Rule 36(b)." Conlon v. U.S., 474 F.3d 616, 621 (9th Cir. 2007) (quoting Fed. R. Civ. P. 36(b)); see also In re Carney, 258 F.3d 415, 419 (5th Cir. 2001) ("a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)").

Here, plaintiff's failure to respond has resulted in the following deemed admissions:

- Plaintiff owed a debt to Sprint.
- Plaintiff owed a debt to Dish Network.
- Defendants attempted to collect the debts from Sprint and Dish Network from plaintiff.
- Defendants reported the Sprint account as disputed to the credit reporting agencies.
- Defendants asked the credit reporting agencies to delete the Dish Network account from plaintiff's credit report.
- Plaintiff never sent a response to the August 2, 2016 letter to defendants.
- Plaintiff has no proof of sending a response to the August 2, 2016 letter to defendants.
- Plaintiff never returned the phone and equipment to Sprint.
- Plaintiff never provided Sprint with proof that the phone or equipment was returned.

(Defs.' RFA (ECF No. 70-3) at 3-5.)

In this regard, the deemed admissions establish that plaintiff never returned the phone to Sprint. That plaintiff owed a debt to Sprit. That defendants were collecting a valid debt. And that plaintiff never responded to defendants' August 2, 2016 collection letter. These admissions contradict plaintiff's allegations that defendants violated the FDCPA and the FCRA. Accordingly, defendants' motion for summary judgment should be granted.

However, in light of plaintiff's pro se status, the undersigned has also evaluated defendants' motion for summary judgment with respect to the claims found in the second amended complaint and the evidence before the court.

////

## B. FDCPA & FCRA Claims

The thrust of plaintiff's complaint is that after plaintiff notified defendants that plaintiff disputed the debt, defendants continued their collection efforts and reported inaccurate information. Specifically, according to the second amended complaint, plaintiff received a collection letter from defendants dated August 2, 2016. (Sec. Am. Compl. (ECF No. 31) 3.) Plaintiff "replied to [defendant] ERC . . . disputing the invalid debt timely by informing ERC[.]" (Id.) 15 U.S.C. § 1681s-2(b) does provide that upon receive a notice of dispute a furnisher of information shall conduct an investigation, review relevant information, report the results of the investigation, and alter the information if it is found to inaccurate or incomplete.

However, the assertion that plaintiff responded to defendants' August 2, 2016 collection letter is not only contradicted by plaintiff's deemed admissions, but defendants have also provided evidence in the form of a declaration that establishes that defendant ERC never received a response to the August 2, 2016 collection letter. (Landoll Decl. (ECF No. 70-4) at 2.) And plaintiff's responses to defendants' motion for summary judgment fail to provide any evidence in support of plaintiff's assertion that plaintiff replied to defendant's August 2, 2016 letter.

Moreover, even assuming *arguendo* that plaintiff had sent a letter to defendants in response to the August 2, 2016 collection letter, the FCRA's "duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009); see also Drew v. Equifax Information Services, LLC, 690 F.3d 1100, 1106 (9th Cir. 2012) ("Drew's direct complaint to Chase in November 2003 would not have triggered any duty since it was unaccompanied by CRA notification.").

With respect to the FDCPA,

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless

> the consumer has notified the debt collector in writing that the debt . . . is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

Here, defendants' evidence establishes that defendant ERC sent plaintiff a collection letter dated August 2, 2016. (Landoll Decl. (ECF No. 70-4) at 2.) Defendant ERC never received a response to the August 2, 2016 letter. (Id.) Defendant ERC sent a second collection letter dated September 15, 2016. (Id.) On October 3, 2016, defendant ERC received a letter from plaintiff dated September 26, 2016, demanding verification of the debt. (Id.) The following day, defendant ERC cease collection activity and sent a verification letter to Sprint regarding plaintiff's debt. (Id. at 3.)

Again, plaintiff has provided no evidence to contradict defendants' evidence. As such, there appears to be no dispute of material fact with respect to defendants' compliance with the FDCPA. See Oganyan v. Square Two Financial, No. CV 11-10226 RGK (VKB), 2012 WL 3656355, at *3 (C.D. Cal. Aug. 24, 2012) ("Plaintiff provides no evidence to establish that she responded within the allotted thirtyday period. Plaintiff's June 2011 Letter, sent nearly ten months after Portfolio's August 2010 Letter, does not trigger the requirements under § 1692g(b). Therefore, Plaintiff has not created a genuine issue of material fact as to whether Portfolio violated § 1692g(b).").

For the reasons stated above, the undersigned finds that there appears to be no dispute of material fact with respect to defendants' conduct. Accordingly, defendants' motion for summary judgment should be granted,

## II. Plaintiff's Motion For Default Judgment

On March 21, 2019, plaintiff filed a motion for default judgment against defendants Moquin and Sarim. (ECF No. 63.) Plaintiff, however, repeatedly failed to properly notice the motion, was advised of that failure, and failed to correct it. (ECF Nos. 64 & 66.)

////

1 | Moreover, plaintiff never sought entry of default at to defendant Moquin or defendant Sarim. "To obtain default judgment under Rule 55, a plaintiff must first request entry of default from the Clerk of the Court and then apply for default judgment." U.S. v. Boyce, 148 F.Supp.2d 1069, 1093 (S.D. Cal. 2001). Nor could plaintiff because those defendants filed an answer on August 1, 2018. (ECF No. 48.)

Accordingly, plaintiff's motion for default judgment will be denied without prejudice to renewal.

**III.   Plaintiff's Motion For Judgment on The Pleadings**

On April 17, 2019, plaintiff filed a motion for "Judgment on a Pleading[.]" (ECF No. 68 at 1.) Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings should be granted "when, taking all the allegations in the pleading as true, the moving parties are entitled to judgment as a matter of law." Smith v. National Steel & Shipbuilding Co., 125 F.3d 751, 753 (9th Cir. 1997). In this regard, the same legal standard applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

Here, plaintiff's motion argues that plaintiff's "authority to command . . . the United States District Court . . . to Order the Honorable Magistrate Judge Debra Barnes . . . to grant Plaintiff Judgment on a pleading is 28 U.S.C. § 1361." (ECF No. 68 at 2.) 28 U.S.C. § 1361, however, simply grants the court jurisdiction over actions involving mandamus to compel an employee of the United States to perform a duty.

Plaintiff's motion also asserts that "defendants do not have a right(s), legal or otherwise to include this Court . . . to contest and or object to Plaintiffs' Order . . . because defendants' counsel . . . filed, and or removed, this cause of action illegally[.]" (ECF No 68 at 2.) As such, defendants "opened themselves to all . . . liability the Plaintiff so wishes and or demands." (Id.) These allegations, however, are vague, conclusory, and unsupported by any legal authority.

////
////

Moreover, on July 3, 2019, plaintiff filed a motion to stay in which plaintiff withdrew the motion for judgment on the pleadings. (ECF No. 91 at 2.)

Accordingly, plaintiff's motion for judgment on the pleadings is withdrawn.

## IV. Defendants' Motion For a Protective Order

On April 23, 2019, defendants filed a motion for a protective order. (ECF No. 69.) Therein, defendants assert that a protective order is necessary because plaintiff served untimely discovery directed at defense counsel and because defense counsel received "troubling, indeed threatening communications from Plaintiff[.]" (Id. at 2.) Discovery in this action, however, has closed and defense counsel cannot be compelled to answer plaintiff's untimely discovery. Moreover, it does not appear that defense counsel has been subjected to continuing or repeated threatening conduct. And the undersigned is recommending that this action be dismissed with prejudice as to the defendants, alleviating the need for contact between the parties.

Accordingly, defendants' motion for a protective order is denied without prejudice to renewal.[4]

## V. Plaintiff's Motion to Enforce and Apply Law

On June 21, 2019, plaintiff filed a motion "to enforce and apply law(s) against" the defendants. (ECF No. 86.) Again, plaintiff failed to properly notice the motion, was advised of this error, and failed to correct the error. (ECF No. 87.) Moreover, the nature, legal authority for, and relief sought by plaintiff's motion are entirely unclear. In this regard, the motion seeks to allow plaintiff to "apply [plaintiff's] law, common law, the State of California state laws and codes but not penal codes; and federal statutes, codes, policies and procedures; and some provisions of the Fair Debt Collection Practices Act[.]" (Id. at 3.)

Accordingly, plaintiff's motion to enforce and apply law is denied without prejudice to renewal.

////

---

[4] As with all motions denied without prejudice to renewal, in the event the assigned District Judge does not adopt these findings and recommendations in full defendants may file a renewed motion for a protective order noticed for hearing before the undersigned if such a motion is necessary.

**VI.     Plaintiff's Motion to Stay**

On July 3, 2019, plaintiff filed a motion to stay this action until October 1, 2019, to allow plaintiff "recuperation of . . . mental, emotional, and physical health and well-being[.]" (ECF No. 91 at 2.) However, October 1, 2019, has passed and during that period there was no activity in this action, aside from filings by plaintiff. (ECF Nos. 94 & 96.) Moreover, on October 9, 2019, plaintiff filed a motion "to resume all Court Proceedings." (ECF No. 97 at 1.) Accordingly, plaintiff's motion to stay will be denied as having been rendered moot.

**VII.    Unserved Defendants**

At the outset of this action, plaintiff was served with a litigant letter that advised plaintiff that Rule 4 of the Federal Rules of Civil Procedure ("Rule") provides that if a defendant was not served within 90 days the defendant would be dismissed from the action without prejudice. (ECF No. 2 at 1.) On November 16, 2017, plaintiff filed a second amended complaint that named a number of defendants in addition to defendants ERC, Moquin, and Sarim. (Sec. Am. Compl. (ECF No. 31) at 1.) On February 20, 2018, plaintiff filed a status report stating that plaintiff reserved "the right to serve" these defendants "in the future if necessary." (ECF No. 35 at 2.) On March 30, 2018, the undersigned again advised plaintiff about the provisions of Rule 4. (ECF No. 41.)

The 90 days allowed for service on those defendants has long since passed. Plaintiff has not filed proof of service on any of those defendants. Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect. Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (quoting Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009)). Here, plaintiff has shown neither good cause nor excusable neglect for failing to serve these defendants.

Accordingly, the undersigned will recommend that the unserved defendants be dismissed without prejudice.

////

////

# CONCLUSION

Given the evidence presented by the parties on summary judgment, there does not appear to be even a scintilla of evidence that the defendants violated plaintiff's rights as alleged. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

In the absence of any evidence of a disputed issue of material fact regarding plaintiff's claims, the undersigned finds that the defendants are entitled to summary judgment in their favor on all of the claims remaining in the second amended complaint. After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to plaintiff's claims and on which plaintiff would bear the burden of proof at trial.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's March 21, 2019 motion for default judgment (ECF No. 63) is denied without prejudice to renewal;

2. Plaintiff's April 17, 2019 motion for judgment on the pleadings (ECF No. 68) is withdrawn;

3. Defendants' April 23, 2019 motion for a protective order (ECF No. 69) is denied without prejudice to renewal;

4. Plaintiff's June 21, 2019 motion to enforce and apply laws (ECF No. 86) is denied without prejudice to renewal; and

5. Plaintiff's July 3, 2019 motion to stay (ECF No. 91) is denied as having been rendered moot.

////

////

Also, IT IS HEREBY RECOMMENDED that:

1. Defendants' April 23, 2019 motion for summary judgment (ECF No. 70) be granted;

2. Judgment be entered for defendant Enhanced Recovery Company, defendant Kirk Moquin, and defendant Marty Sarim;

3. All other defendants be dismissed without prejudice; and

4. This action be closed.

Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 16, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.pro se/ortiz0607.msj.f&rs